Harry Chris JOHNSON and Rebecca Jane Johnson, H/W, Appellants,

v.

HENKELS & McCOY, INC. and Western Stress, Inc., and General Electric Company in its own right and d/b/a GE Nuclear Energy, E.H. Hinds, Division of Altantic Plant Maintenance, Inc.

Harry Chris JOHNSON and Rebecca Jane Johnson, H/W, Appellants,

v.

HENKELS & McCOY, INC. and Western Stress, Inc. and E.H. Hinds, Division of Atlantic Plaint Maintenance, Inc. and General Electric Company in its own right and d/b/a GE Nuclear Energy.

Superior Court of Pennsylvania.

Argued Sept. 16, 1997.

Filed Dec. 17, 1997.

---

Peter M. Patton, Philadelphia, for appellants.

Joanne R. Jenkins, Philadelphia, for Henkels & McCoy, Inc., appellee.

Glenn M. Campbell, Philadelphia, for Western Stress, Inc., appellee.

Before CIRILLO and CERCONE, President Judges Emeritus, and MONTEMURO, J.*

MONTEMURO, Judge:

Appellant/Plaintiffs, Harry and Rebecca Johnson, appeal the January 3, 1997 Order of the Philadelphia County Court of Common Pleas granting the petition of Appellee/Defendant, Henkels & McCoy, Inc., to transfer venue to Montgomery County based on the doctrine of forum non conveniens.[1] For the reasons set forth below, we reverse.

The underlying action arose from an accident at the Bergen Fossil Generating Station construction site in Ridgefield, New Jersey. Appellant Harry Johnson alleged that he was working at the site as an employee of General Electric Company, when he fell fifteen feet from a thirty-two inch pipe and sustained serious injuries. On April 17, 1996, Mr. Johnson and his wife filed a complaint in Philadelphia County against Appellees, Henkels & McCoy, Inc. and Western Stress, Inc. Appellants then filed a second action in Philadelphia County on August 19, 1996 against the above two defendants, as well as E.H. Hinds, Division of Atlantic Plant Maintenance, Inc. On September 16 and September 24, 1996, Appellee Henkels & McCoy joined General Electric Company as an additional defendant in both cases.

Appellants filed a petition to consolidate the two actions on November 6, 1996, which the trial court granted on January 3, 1997. On November 27, 1996, Appellee Henkels & McCoy filed a petition to transfer the actions to Montgomery County pursuant to Pa. R.C.P. 1006(d)(1), based on the doctrine of forum non conveniens. By Order dated January 3, 1997, the trial court granted the petition and transferred the consolidated actions to Montgomery County. Appellants filed this timely appeal wherein they raise the sole claim that the trial court abused its discretion in transferring the present action to Montgomery County. We agree.

Pennsylvania Rule of Civil Procedure 1006(d)(1) permits a defendant to petition for a change of venue even though the original venue chosen by the plaintiff is proper:

[f]or the convenience of parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought.

Pa.R.C.P. 1006(d)(1). In the present case, original venue in Philadelphia County was proper since two of the defendants, Appellee Henkels & McCoy and E.H. Hinds, regularly conduct business in that county. See Pa. R.C.P. 2179(a)(2) (permitting an action to be brought against a corporation in the county where it "regularly conducts business"). Appellee Henkels & McCoy, however, petitioned for a transfer of venue to Montgomery County, where it has its principal place of business and where Appellants reside. See Pa.R.C.P. 2179(a)(1) (permitting an action to be brought against a corporation in the county where its "principal place of business is located"). Since Appellants could have originally filed the lawsuit in Montgomery County, the petition was proper; thus we must consider whether the trial judge erred when he transferred the action.

* Retired Justice assigned to the Superior Court.

1. None of the other three defendants in the underlying action, Western Stress, Inc., E.H. Hinds, or General Electric Company, joined in Henkels' petition; however, Western Stress has filed a brief to this Court in support of the order transferring venue. Therefore, "Appellees" will refer to both Henkels & McCoy and Western Stress.

Rule 1006(d)(1) gives a trial judge considerable discretion in granting a change of venue based on forum non conveniens; absent an abuse of that discretion, we will not disturb his decision. *Keuther v. Snyder,* 444 Pa.Super. 468, 471, 664 A.2d 168, 169 (1995). An abuse of discretion occurs when the judge misapplies the law or exercises his judgment in a manner that is manifestly unreasonable or the result of bias, prejudice, or ill will. *Id.* Moreover, " 'if the trial court has not held the defendant to the proper burden[,] . . . the equivalent of an abuse of discretion has been demonstrated.' " *Petty v. Suburban General Hosp.,* 363 Pa.Super. 277, 282, 525 A.2d 1230, 1232–33 (1987) (quoting *Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 160 (3d Cir.1980)).

Recently, in *Cheeseman v. Lethal Exterminator, Inc.,* 549 Pa. 200, 701 A.2d 156, (1997),[2] the Pennsylvania Supreme Court clarified the appropriate standard a trial court should utilize when considering a defendant's petition to transfer venue pursuant to Pa.R.C.P. 1006(d)(1):

> a petition to transfer venue should not be granted unless the defendant meets its burden of **demonstrating, with detailed information on the record, that the plaintiff's chosen forum is oppressive or vexatious to the defendant.**

*Id.,* at 213, 701 A.2d at 162 (emphasis added). The Court emphasized that trial courts may not consider their own "private and public interest factors," including "court congestion," in determining whether venue should be transferred. *Id.* Therefore, although two prior Supreme Court decisions, *Okkerse v. Howe,* 521 Pa. 509, 556 A.2d 827 (1989) and *Scola v. AC & S, Inc.,* 540 Pa. 353, 657 A.2d 1234 (1995), included both the "oppressive or vexatious" test and the "private and public interest factors" test, the *Cheeseman* Court

concluded that the inclusion of the second test was "ill-advised." *Cheeseman,* 549 Pa. at 214–15, 701 A.2d at 163. "The convenience to the court is not mentioned in Rule 1006(d)(1) and is not an appropriate consideration for a Rule 1006(d)(1) inquiry."[3] *Id.,* at 212, 701 A.2d at 161.

Therefore, in the present case, we must determine whether the trial court held Appellees to their proper burden in demonstrating, on the record, that trial in Philadelphia County would be oppressive or vexatious. The *Cheeseman* Court explained how a petitioner may meet this burden:

> by establishing with facts on the record that the plaintiff's choice of forum was designed to harass the defendant, even at some inconvenience to the plaintiff himself[, or a]lternatively, . . . by establishing on the record that trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or the ability to conduct a view of the premises involved in the dispute. **But, we stress that the defendant must show more than that the chosen forum is merely inconvenient to him.**

*Id.* at 213, 701 A.2d at 162 (citation and footnote omitted) (emphasis added). We conclude that trial court failed to hold Appellees to the proper burden.

A review of the trial court Opinion reveals that the court clearly granted Appellee's petition based on its own private and public interest factors. *See* Trial Ct. Op. at 6–8. The court found that there were "insufficient 'private interest' contacts with Philadelphia County to oblige [it] to maintain this case in Philadelphia." (Trial Ct. Op. at 7). In addition, the trial court considered the "substantial backlog of civil cases" in Philadelphia County as a "public interest factor"

---

**2.** *Cheeseman* involved two consolidated appeals from this Court in which we affirmed a trial court's order transferring venue from Philadelphia to Bucks County. *See Cheeseman v. Lethal,* 451 Pa.Super. 590, 678 A.2d 823 (1996) and *Forman v. Rossman,* 449 Pa.Super. 34, 672 A.2d 1341 (1996). On appeal, the Supreme Court concluded in both cases that the trial court failed to hold the appellee/defendants to the proper burden; thus the Supreme Court reversed the respective orders of this Court and remanded the

cases to the Philadelphia Court of Common Pleas for disposition. *Cheeseman,* 549 Pa. at 214, 701 A.2d 156.

**3.** The Supreme Court explained that the "private and public interest" test, quoted in both *Okkerse* and *Scola,* originated in federal diversity cases where choice of law problems and a court's administrative concerns are relevant. *Id.*

supporting transfer. (*Id.* at 215–16, 701 A.2d at 163). Nowhere in the Opinion is the conclusion that trial in Philadelphia County would be oppressive and vexatious to Appellees. The trial judge obviously based his decision on the second venue test, which the Supreme Court has declared improper.

■ Moreover, after an independent review of the record, we also conclude that Appellees have not met their burden. In its Petition to Transfer Venue, Appellee Henkels & McCoy alleged the following facts in support of transfer: Appellant/Husband received a significant portion of his medical treatment in Montgomery County, "[i]ndividuals have knowledge of this accident and the aftermath reside in Montgomery County[,]" and "[a]ll parties will be unjustifiably inconvenienced by pre-trial procedures and trial in Philadelphia County." (Petition to Transfer Venue for Forum Non Conveniens at ¶ 16, 18, and 21). However, these facts, even if true,[4] are insufficient to warrant transfer. Appellee Henkels & McCoy did not even allege in its petition, let alone prove, that venue in Philadelphia County would be oppressive or vexatious.[5] Under *Cheeseman,* a defendant "must show more than that the chosen forum is merely inconvenient to him." *Cheeseman,* 549 Pa. at 213, 701 A.2d at 162 (footnote omitted). *See Keuther v. Snyder,* 444 Pa.Super. at 472, 664 A.2d at 170 (1995) (reversing transfer of venue of medical malpractice action from Philadelphia to Bucks County even though plaintiff argued that all witnesses, parties and evidence located in Bucks County; this Court found record "devoid of any allegations that litigation in Phila-

delphia County would be oppressive or vexatious to [defendants].").

Additionally, Appellees have not demonstrated how trial in Montgomery County "would provide easier access to witnesses or other sources of proof." *Scola,* 540 Pa. at 368, 657 A.2d at 1242. Indeed, it is undisputed that the accident occurred in New Jersey, which is closer to Philadelphia County than Montgomery County, and that Mr. Johnson received medical treatment there. Appellees alleged, however, that a significant portion of Mr. Johnson's follow-up medical treatment was rendered in Montgomery County, and individuals with "knowledge" of the accident reside in Montgomery County, facts which Appellants specifically denied.[6] Moreover, Appellees did not provide the trial court with the names of any **witnesses** who would suffer hardship should trial continue in Philadelphia, nor any affidavits from these alleged witnesses attesting to that fact. *See Petty,* 363 Pa.Super. at 285, 525 A.2d at 1234 (stating that "[t]he party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.") (citation omitted). Therefore, based on the record, we cannot conclude that trial in Philadelphia County would be oppressive or vexatious to Appellees.

Order reversed. Case remanded to Philadelphia Court of Common Pleas. Jurisdiction relinquished.

CIRILLO, President Judge Emeritus, files a Concurring and Dissenting Opinion.

---

4. We note that, in their Answer to the petition, Appellants specifically denied all of the above allegations. Therefore, we cannot consider them either undisputed or proven facts. "We refuse to sanction the transfer of a cause of action premised on the convenience of parties and witnesses on the mere allegation, specifically denied by plaintiff/appellant, of the petitioner." *Petty,* 363 Pa.Super. at 285, 525 A.2d at 1234.

5. Although Appellee Henkels & McCoy stated in its brief to this Court that "[d]efendants clearly showed that holding the trial in Philadelphia County would be oppressive and vexatious[,]" it based that conclusion on the fact that Philadelphia has few contacts with the case. (Henkels & McCoy's Brief at 2). However, as the *Cheeseman*

Court held, "[c]laims by the defendant in its petition that no significant aspect of the case involves the chosen forum ... do not amount to a showing that the chosen forum is oppressive or vexatious." *Cheeseman,* 549 Pa. at 214, 701 A.2d 156. Moreover, Appellee Western Stress stated that there was "no need for defendants in the present case to make a showing of oppressiveness or vexation" since the second venue test, considering the court's private and public interest factors, was available. (Western Stress' Brief at 8–9).

6. Appellants agree that Mr. Johnson received some treatment in Montgomery County, however, they refer to it as "limited follow-up medical treatment." (Appellants' Brief at 21).

CIRILLO, President Judge Emeritus, concurring and dissenting:

Although I agree with the majority's decision to reverse the trial court's order granting transfer of venue based upon the doctrine of *forum non conveniens*, I must respectfully dissent with the ultimate disposition of this case—namely, to remand the case and conduct trial in the original forum of Philadelphia County.

The holding in *Cheeseman v. Lethal Exterminator, Inc.*, 549 Pa. 200, 701 A.2d 156 (1997), upon which the majority relies, is not entirely clear. The concluding line of the supreme court opinion states: "The Superior Court's orders in *Cheeseman* and *Forman* affirming the trial courts' transfer of venue in both matters are accordingly reversed and remanded to the trial court for further proceedings in accordance with this opinion." *Id.* at 214, 701 A.2d at 162. While the supreme court has conclusively established a new transfer test for future petitioners, the court never prescribes the proper procedure upon remand of cases that have failed to meet the new transfer test.

While we may presume, after reviewing the *Cheeseman* dissent's argument, that the majority does not wish to allow these unsuccessful petitioners a chance to meet the revised transfer test upon remand, I cannot make such a snap judgment. In keeping with equity and the promotion of justice, I believe that petitioners in transfer cases decided before the supreme court's decision in *Cheeseman* (decided August 22, 1997) must have the chance to prove whether their cases meet the new transfer standard, i.e., whether failure to transfer the case would prove to be oppressive and vexatious. This procedure, however, should only be employed using the following safeguard: that the petitioners have already alleged, in their original petition, that failure to transfer the case would be oppressive and vexatious. Upon remand, the court should allow these "second-time petitioners" the right to resubmit a revised petition for transfer that includes detailed information on the record demonstrating that the plaintiff's chosen forum is oppressive and vexatious.

By employing this procedure, we will provide trial courts with a clearly defined rule to apply to the sea of recent cases in which the supreme court has granted allocatur and remanded to the original trial court for proceedings consistent with *Cheeseman*. See *Noll v. Keagy*, 549 Pa. 591, 702 A.2d 362 (1997) (petition for allowance of appeal granted; superior court order affirming trial court order transferring venue to another county reversed; case remanded to the original county forum for further proceedings consistent with *Cheeseman* opinion); *Hofmann v. ACME Markets*, 549 Pa. 582, 702 A.2d 357 (1997) (same); *Godshall v. Blatt*, 549 Pa. 583, 702 A.2d 357 (1997) (same); *Leiser v. Atlantic Ref. & Mktg. Corp.*, 549 Pa. 584, 702 A.2d 358 (1997) (same); *Green v. Whiteman*, 549 Pa. 580, 702 A.2d 356 (1997) (same); *Kolbe v. Gratch*, 549 Pa. 588, 702 A.2d 360 (1997) (same); *Minio v. Gratch*, 549 Pa. 588, 702 A.2d 360 (1997) (same); *Arnold v. Fraider*, 549 Pa. 587, 702 A.2d 359 (1997) (same); *Boarts v. Silver*, 549 Pa. 589, 702 A.2d 360 (1997) (same); *Ferst v. Fraider*, 549 Pa. 590, 702 A.2d 361 (1997) (same); *Evoli v. Rosenfeld*, 549 Pa. 586, 702 A.2d 359 (1997) (same); *Lamar v. Fraider*, 549 Pa. 586, 702 A.2d 359 (1997) (same); *Porcellini v. International Mgmt. Consultants*, 549 Pa. 581, 702 A.2d 357 (1997) (same); *Seidman v. Michitti*, 549 Pa. 585, 702 A.2d 358 (1997) (same); *Hunsicker v. R.D. Werner Co.*, 549 Pa. 544, 701 A.2d 1343 (1997) (same); *Krausz v. Fine Hotels Corp.*, 549 Pa. 543, 701 A.2d 1342 (1997) (same); *Techtmann v. Roy J. Howie & Robert Gray's Sons*, 548 Pa. 567, 699 A.2d 729 (1997) (same); *Beard v. Rite–Aid of PA, Inc.*, 548 Pa. 564, 699 A.2d 728 (1997) (same); *Rodriquez v. Lehman Equip. Sales*, 548 Pa. 566, 699 A.2d 729 (1997) (same); *Hansford v. Valley Forge Ctr. Assocs.*, 548 Pa. 570, 699 A.2d 730 (1997) (same); *Hunt v. Philadelphia Electric Co.*, 548 Pa. 569, 699 A.2d 730 (1997) (same);.

In closing, I am compelled to reiterate the well-advised words contained within the *Cheeseman* dissent authored by the learned Madame Justice Newman:

[C]onsidering that the *Okkerse–Scola* test was "ill-advised" and created "obvious confusion", we can hardly fault the learned trial court for its decisions. In granting

Appellees' petitioners to transfer venue, the trial court relied primarily on its own private and public interest factors. **Because only now have we clearly decided that a court may no longer weigh these factors in its Rule 1006(d)(1) analysis, fairness dictates that we should remand these cases to the trial court so that it may determine if Appellants' choice of forum was oppressive and vexatious, which is the only remaining prong of the newly truncated** *Okkerse–Scola* **test.**

*Cheeseman,* at 215–16, 701 A.2d 156